<hr />

SATELE MOMOSEA UOKA, Plaintiff

v.

UIAGALELEI IONA, UIAGALELEI LEALOFI, TUIASOSOPO MARIOTA, and FALE FAI'AI, Defendants

High Court of American Samoa
Land & Titles Division

LT No. 17-86

September 20, 1988

Before REES, Chief Justice.

Counsel: For Plaintiff, Asaua Fuimaono
        For Defendant Fai'ai, Charles Ala'ilima
        For Defendant Tuiasosopo, Togiola T.A.
            Tulafono
        For Defendants Uiagalelei, Aitofele Sunia

On Motion for New Trial or Relief From Judgment:

This case was filed in 1986 and tried in December 1987. Judgment was rendered on December 18, 1987, in favor of defendant Fale Fai'ai and in favor of defendants Uiagalelei and Tuiasosopo with respect to some but not all of the land claimed by them. The Court's findings of fact, conclusions of law, and order are set forth at 6 A.S.R.2d 143. Satele, Uiagalelei, and Tuiasosopo have appealed; briefs have been filed by all parties and the appeals are scheduled to be heard next month.

Uiagalelei now brings a motion in the trial court. It is styled a "motion for new trial or relief from judgment" and is grounded in counsel's discovery of new evidence.

The motion comes about seven months too late to be considered as a motion for new trial. A.S.C.A. § 43.0802(a). The statute is jurisdictional and leaves the Court no discretion to extend or disregard the ten day time limit it

provides. _See_ Judicial Memorandum No. 2-87, 4 A.S.R.2d 172 (1987), and authorities cited therein. We therefore consider the motion as one for relief from judgment under Territorial Court Rule of Civil Procedure 60(b).

Rule 60(b) provides in pertinent part that a party may be relieved from judgment on the ground of "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial . . . ." The new evidence proffered by counsel for Uiagalelei consists of certain statements made at the hearing of _Fauolo v. Tauvaelua_, 1 A.S.R. 260 (1912), and in the pleadings of _Teo v. Siatafu_, 1 A.S.R. 327 (1921).

Counsel states that the records of these cases establish facts "which neither affiant nor defendant could have discovered in the exercise of due diligence before trial for the reason that neither affiant nor defendant had any way of knowing of the existence of such facts until their discovery by affiant."

The Court should grant relief from judgment only if it is satisfied both that the evidence in question really could not have been discovered by due diligence before trial or within ten days after trial, and only then if the evidence would seem likely to produce a different outcome upon retrial.

### I.  Due Diligence

Counsel stated at oral argument on this motion that in preparation for trial he checked the American Samoa Reports for all cases involving land called "Fasamea," but that these cases were essentially undiscoverable because their captions did not refer to Fasamea. While preparing for the appeal he somehow came across these cases. _Fauolo v. Tauvaelua_ does not concern Fasamea but may shed some light on the identity of the man called Fau'olo who first registered it. _Teo v. Siatafu_ does appear to involve the land called Fasamea by some of the parties to this case, but it was filed by neighbors who alleged encroachment on their own land called Laumaala.

The Court is not satisfied that checking the index for cases whose captions advertise their connection to the land presently in dispute

99

constitutes due diligence. The answer filed eighteen months before trial by defendant Fale Fai'ai indicates that her claim was based on a grant by Satele to the Fauolo family. A subsequent memorandum, filed on the eve of trial, gives a much fuller account of the Fauolo family history. Although there was much in this memorandum and in the evidence produced at trial that was new,[1] all of it was discoverable before trial. For at least two years now the Court has been imploring attorneys to take discovery prior to the trial of important cases. No discovery appears to have been taken in this case. It was entirely within the power of opposing counsel to learn from Fale Fai'ai prior to trial everything she presented at trial, including whatever it was that later caused him to research the records in the Fauolo and Teo cases. Instead, as happens all too often, everyone was satisfied to proceed to trial knowing only the barest outlines of what the other parties would have to say.

In cases where a party seeks relief from a default judgment, courts tend to characterize all but the most egregious neglect as "excusable" in

---

[1] The memorandum and the evidence not only elaborated on the factual allegations in the original answer, but also reflected a change in the legal theory on which defendant Fale Fai'ai claimed the land. The original answer asserted that Fasamea was Satele family land committed according to Samoan custom to the perpetual possession and use of the Fau'olo family. The memorandum and the evidence produced at trial --- to the effect that Fau'olo had registered part of the land in 1911 as his own land, that by 1939 he had attempted to register and to convey the rest of it, and that his descendants had asserted ownership of it in various ways down to the present day --- established to the Court's satisfaction that Fau'olo had been occupying the land on his own account and that any authority Satele may have had over the land was not in a proprietary capacity but in his political capacity as the highest chief in the county. This evidence was introduced without objection by any party; its variance with the pleadings therefore does not affect the result at trial. T.C.R.C.P. Rule 15(b).

deference to the principle that cases should ordinarily be tried on their merits. In this case, however, there has already been a trial. Three judges and several other court officials, as well as the various parties and their attorneys, each spent twenty-five hours in court time alone. Many more hours have been devoted to writing the opinion and the appellate briefs. To grant the principle that a party who did not take discovery can wait until after the trial and the issuance of an opinion and _then_ track down whatever promising leads have emerged would be to relegate the first trial and opinion in every case to the status of pre-trial discovery.

### II. The Likelihood of a Different Result upon Retrial

Even if we were to conclude that this evidence could not have been discovered with due diligence before trial --- or, to be precise, before the statutory deadline for filing a motion for new trial --- it would be an insufficient basis on which to vacate the judgment. The evidence consists almost exclusively of various statements about the identity and background of the Fau'olo who held the title circa 1912 (when ten acres called Fasamea were registered in the name of Fau'olo) and 1914 (when Fau'olo apparently offered for registration an expanded survey of Fasamea, this one comprising about 35 acres.) The statements on which counsel relies, however, are not substantially inconsistent with the findings and conclusions the Court has made in the present case.[2]

---

[2] The statements in question are almost exclusively from the transcript of the hearing in the _Fau'olo_ case, held January 12, 1912.

The pleading in the _Teo_ case consists of boilerplate to the effect that Fau'olo and Siatafu are trying to encroach on plaintiffs' land, that Fau'olo and Siatafu have never used the land and plaintiffs have long occupied and cultivated the land, etc. The claims of encroachment were not made by ancestors in title of Uiagalelei, Satele, or Tuiasosopo, and they appear to concern a different part of Fasamea than the boundary issues raised by Uiagalelei in the present case. The dispute was found by the Court to have been amicably

Accepting for the moment the truth of all the statements in question, we would draw the following conclusions about the status of the Fau'olo title in 1912:

1) It was within the power of three people to confer the Fau'olo title. They were Siatafu, Sineavea, and Tauanu'u. They were the "true descendants of the Fau'olo title." They had conferred the title upon several persons and then removed it from them.

2) Shortly before 1912 the title had been conferred upon Fau'olo Sila. He was said by one of his opponents to have come originally from Upolu. If he did come from Upolu, we have no way of knowing when he arrived in Tutuila or where he lived prior to assuming the Fau'olo title, except that his opponent places him in Upolu at the time of a certain event that probably happened circa 1882. It also appears that he did not reside in Poloa for very long, if at all, prior to taking the Fau'olo title.

3) Since Sila is not mentioned as among the "true descendants" of the Fau'olo title who have the power to bestow the title, he probably was not a full blood brother of Siatafu.

4) Although Fau'olo is a title of the village of Poloa --- we glean this not only from the transcript in the <u>Fau'olo</u> case but also from

settled. The only light the pleading sheds on the present controversy is that it (1) bolsters the testimony of defendant Fai'ai that the 1939 conveyance from Fau'olo to Fa'ailoilo of 35.5 acres, which incorporated a map and survey dated 1914, actually did reflect the boundaries of Fasamea as her family had claimed them since 1914 rather than being a later contrivance; (2) affords a plausible explanation for the failure of the Territorial Registrar to register the 35.5 acre parcel surveyed by Fau'olo in 1914; and (3) reinforces the Fau'olo family history to the effect that Fau'olo acted together with Siatafu. If this evidence had been available at trial it would have helped defendant Fai'ai, who prevailed even without it.

judicial notice of the matai register for Poloa——— the family was perceived, at least by its opponents, as residing primarily in Se'etaga. The opponents frequently refer to members of the Fau'olo family, and on one occasion to the whole family, as being from Se'etaga or of having been in Se'etaga at the time of various important events. Tauanu'u, a name whose incumbent titleholder in 1912 was one of the "true descendants" of the Fau'olo title, is a matai name of Se'etaga. A person named Paepae is also prominently mentioned in the Fau'olo transcript as an influential member of the Fau'olo family; Paepae is a matai name of Se'etaga. (We take judicial notice of the matai register of Se'etaga.)

5) As counsel observes, the person called Paepae in the Fau'olo transcript is not the same person as Fau'olo Sila.

5) Siatafu grew up at least partly in Taputimu, probably because her father, a former holder of the Fau'olo title, had gone there to live with his wife's family.

6) Fau'olo Sila acted together with Siatafu to register Fasamea and to claim or reclaim Fau'olo family land in Poloa.

Counsel wishes us to infer from these data that the Fau'olo who registered ten acres called Fasamea in 1912 could not possibly be the same person as the Fau'olo who conveyed thirty-five acres called Fasamea to his daughter (the grandmother of defendant Fale Fai'ai) in 1939. The latter was identified by his great-granddaughter in 1987 as Fau'olo Paepae of Se'etaga, brother of Siatafu; the former is identified in the "newly discovered" transcript as Fau'olo Sila of Upolu and Poloa, probably not a blood brother of Siatafu. Counsel further infers that the 1939 grantor must have been the Paepae mentioned in the 1912 transcript, who pretty clearly was not the same person as Fau'olo Sila.

We decline, however, to draw these inferences. The evidence proffered by counsel is to the effect that a man named Sila came from Upolu at some time between 1882 and 1912 and lived somewhere other than Poloa until shortly before 1912 when the Fau'olo title was bestowed upon him. It also appears from the transcript that Fau'olo Sila may

103

not have resided primarily in Poloa even after taking the title. In any case, another affidavit submitted by counsel for Uiagalelei tells us that by the mid-1930s Fau'olo had left Poloa for good. On this evidence it would seem quite possible, indeed likely, that one of the places he resided was in Se'etaga where most members of the Fau'olo family (including two of the three people with power to bestow the title) seem to have had their principal residence. Nothing in the newly discovered evidence, therefore, supports counsel's suggested conclusion that this Fau'olo was not the same person who refers to himself as "Fau'olo of Se'etaga" in the 1939 deed. We note from the matai register of Poloa that Fau'olo Sila registered the title in 1911 and that the next registration of the title was not until 1941.

As for counsel's inference that the Fau'olo of 1939 must have been the Paepae mentioned in the 1912 transcript and must therefore not have been Fau'olo Sila, it rests on the assumption that there was only one Paepae. This assumption is obviously unwarranted.

If Paepae had been the 1939 grantor's taule'ale'a name, the existence in 1912 of a Paepae who was important in the Fau'olo family but who was not "the" Fau'olo in 1912 might be important to our case. The only evidence that the Fau'olo who signed the 1939 deed ever was called by the name Paepae, however, is the testimony of his great-granddaughter Fale Fai'ai to the effect that he acquired the name Paepae at some time _after_ his acquisition of the Fau'olo title. This clearly implies that Paepae is a matai name. A person remembered as Fau'olo Paepae in 1987 by his great-granddaughter need not, of course, have been the holder of the Paepae title in 1912.

The matai register reflects that Paepae is a matai title of Se'etaga. Any number of people registered the title during the probable lifetime of Fau'olo; during one four-year period two different people seem to have registered it; and others may have shared the title without registering it, as is customary in some families. A person signing his name simply "Paepae" was one of the three witnesses to the 1939 conveyance by Fau'olo; this implies, although it does not prove, that as of 1939 Fau'olo himself had not come to be called Paepae. Perhaps he acquired the name after

he conveyed Fasamea to his daughter. Whether or not Fau'olo was ever called Paepae was in no way important to any of the Court's findings or conclusions.

Nor does it matter whether Fau'olo was a full blood brother of Siatafu. He could have been her first cousin or even her half-brother without sharing her direct descent from the Fau'olo title. As counsel knows, Samoans frequently refer to their relatives of the same generation as brothers and sisters although they are not born of the same mother and father. The records of the Fau'olo and Teo cases neither establish nor negate a blood relationship between Siatafu and Fau'olo. They do make clear that Siatafu vigorously supported Fau'olo's registration efforts, not only the earlier ten acre registration but also the later attempt to register the whole 35 acres.

The records are in no way inconsistent with Fale Fai'ai's use of the words "brother" and "sister" to describe Siatafu and Fau'olo; if introduced at trial their primary effect would have been to provide documentary support for the more pertinent aspects of the case presented by Fale Fai'ai. Fau'olo came to Fasamea with the support of Siatafu, the wife of Satele and a member of the Fau'olo family; he promptly registered ten acres and later attempted to register 35 acres, not as Satele land but in his own name and that of Siatafu.

Finally, however, suppose the Court were to conclude --- against the weight of the evidence, even as supplemented by the "newly discovered" transcripts --- that the 1912 Fau'olo and the 1939 Fau'olo were two different people. Whose case would be strengthened? It would not help Uiagalelei, whose disagreement with Fale Fai'ai and her relatives is in the nature of a boundary dispute and whose activities on the land described in the 1939 deed were found to date only from the 1970s. Nor would it help Satele, whose claim rests on the presumption that one who occupies and cultivates land does so for the benefit of his extended family; these records strongly support the Court's original conclusion that Fau'olo (whoever he was) and Siatafu intended this land to become their own property and not that of the Satele family. It is perhaps even more difficult to see how a conclusion that Fau'olo the 1939 grantor had

105

nothing to grant would help Tuiasosopo, whose ancestor came to the land through his half-sister Fa'ailoilo (the daughter of this very Fau'olo) and whose own survey in 1974 listed the land as belonging to Fa'ailoilo.

The only possible beneficiaries of a conclusion that the Fau'olo who signed the deed in 1939 was a usurper would be the heirs (if any) of the Fau'olo who registered the land in 1911, and perhaps the heirs (if any) of Siatafu. No such people appeared in this case, nor does the voluminous evidence suggest any trace of them on Fasamea at any time between 1911 and the present. Even if the hypothetical heirs of the hypothetical first Fau'olo had appeared, they would have had to overcome what would then be a strong adverse possession claim by the descendants of the "other" Fau'olo.

Since the descendants of this Fau'olo presented not only the best evidence of possession but also the best evidence of title, the Court did not reach the question of adverse possession. Nor is it necessary to reach that issue at this time, since the evidence even as supplemented by the proffered exhibits strongly supports the title conveyed by Fau'olo to Fa'ailoilo in 1939 and claimed since then by Fa'ailoilo and her descendants. Fale Fai'ai testified that her great-grandfather Fau'olo ---indisputably the person who executed the 1939 deed --- was also the person who offered Fasamea for registration in 1912 and 1914. This testimony was unrebutted at trial although two of the three opposing parties are connected to the Fau'olo family by marriage and would presumably have had access to any contrary tradition. Nothing in the newly discovered evidence suggests that the testimony of Fale Fai'ai on this point was anything but the truth.

The motion is denied.